



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUL - 7 2025

CLERK, U.S. DISTRICT COURT
By_____
　　　　　Deputy

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA

v.                                                         No. 4:25-mJ-451

DANIEL ROLANDO SANCHEZ ESTRADA

## CRIMINAL COMPLAINT

I, Special Agent Joseph Clark Wiethorn, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**Alleged Offense:**

> Between on or about July 5 and 6, 2025, in the Northern District of Texas, the defendant, Daniel Rolando Sanchez Estrada, did corruptly alter, destroy, mutilate, and conceal a record, document, and other object, and attempt to do so, and did conspire with others to do so, with the intent to impair its integrity and availability for use in an official proceeding, in violation of 18 U.S.C. § 1512(c)(1) and (k).

## BACKGROUND

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been since December 2020. Currently, I am currently assigned to a squad in Fort Worth, Texas that is responsible for investigating terrorism cases. I am responsible for conducting investigations into various threats, including racially motivated violent extremism, militia extremism, weapons of mass destruction violations, and violent antigovernment extremists. I have received training in such areas as counter terrorism, threat management, threat assessment and violent crimes. I have worked investigations

Criminal Complaint - Page 1

dealing with violent gangs, transportation and distribution of illegal narcotics, firearms offenses, access device fraud and money laundering. I have also received training regarding computers and digital evidence. The investigations I have conducted have often involved the use of physical surveillance, cooperating witnesses, financial and telephone toll record analysis, the execution of search and arrest warrants, and the debriefing of witnesses and subjects. I also have experience in the review of evidence obtained during the execution of search warrants. Prior to joining the FBI, I was a Police Officer for the city of Grapevine, Texas for 7 years, a Uniformed Division Officer with the United States Secret Service for 2 years, and a Correctional Officer with the Texas Department of Criminal Justice for 5 years.

2.    I submit there is probable cause to believe that on or about July 6, 2025 in the Fort Worth Division of the Northern District of Texas and elsewhere, the defendant, Daniel Rolando Sanchez Estrada, altered, destroyed, mutilated, or concealed a record, document, or other object, or attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding, in violation of 18 U.S.C § 1512(c). I further submit there is probable cause to believe that on or about July 6, 2025, in the Fort Worth Division of the Northern District of Texas and elsewhere, the defendant, Daniel Rolando Sanchez Estrada, did conspire with one or more individuals to violate 18 U.S.C. § 1512(c), in violation of 18 U.S.C. § 1512(k).

3.    This facts in this affidavit come from my personal observations, my training and experience, information obtained from other law enforcement officers, and

Criminal Complaint - Page 2

the review of records. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

4.     Federal law enforcement is conducting a criminal investigation of Ines Soto ("I. SOTO"), Bradford Winston Morris, a/k/a Meagan Morris ("MORRIS"), Nathan Josiah Baumann ("BAUMANN"), Elizabeth Soto ("E. SOTO"), Maricela Rueda ("RUEDA"), Seth Edison Sikes ("SIKES"), Joy Abigail Gibson ("GIBSON"), Zachary Jared Evetts ("EVETTS"), Cameron James Arnold, a/k/a Autumn Hill ("ARNOLD"), Shelby Donahue ("DONAHUE"), Savanna Batten ("BATTEN"), Daniel Rolando Sanchez Estrada ("SANCHEZ"), and others (hereinafter the "Target Subjects") for committing federal offenses.

5.     The violations of law under investigation include but are not limited to the following: 18 U.S.C. §§ 111 (Assault on a Federal Officer); 371 (Conspiracy); 924(c) (Possession of a Firearm in Furtherance of a Crime of Violence); 1114 (Protection of Officers and Employees of the United States, and Officers Assisting Such an Officer); 1361 (Damage to Government Property); 1512 (Tampering with a Witness, Victim, or an Informant); and 2 (Aiding and Abetting) (hereinafter "the Target Offenses").

6.     On July 4, 2025, at approximately 10:37 PM Central Daylight Time (CDT), Prairieland Detention Center, located at 1209 Sunflower Lane, Alvarado, Texas, became concerned that a group of unidentified subjects were breaking into the facility. Prairieland

Detention Center is a Department of Homeland Security ("DHS") detention facility that holds persons related to immigration violations or are awaiting deportation hearings.

7.     At approximately 10:42 PM CDT, a group of individuals including those referenced above, was observed on CCTV spraying graffiti, firing fireworks towards the facility, and using high-powered flashlights. DHS Officers manning the facility then called 9-1-1, prompting a response from Alvarado Police Department ("APD").

8.     At approximately 10:59 PM CDT, an APD officer was dispatched to the Prairieland Detention Center to make contact with then unidentified subjects (later identified to be the target subjects). Upon arrival on scene, one or more of the target subjects opened fire, shooting the APD officer in the neck and/or upper back area. The target subjects also shot at DHS Correctional Officers. The shooting was captured on both CCTV and the APD officer's body-camera. Review of the APD officer's body-camera and interviews of the correctional officers indicates there were two probable shooters using AR-style rifles to shoot them. The correctional officers estimated the assailants discharged between 20 and 30 rounds of what appeared to be automatic machinegun fire. One of the AR-style rifles that was recovered at the scene had a bullet "stove-pipped" or jammed in the chamber thereby causing the weapon to malfunction.

9.     Shortly thereafter, Bradford Winston Morris aka Meagan MORRIS, was traffic-stopped after fleeing the scene in a red/maroon 2007 Hyundai and was taken into custody by a Johnson County Sheriff's Office ("JCSO") detective. That is, the detective with JCSO was on the way to Sunflower Lane when he was radioed and told that a

red/maroon Hyundai was observed fleeing the scene and that it was headed in the detective's direction. During the traffic stop, a black pistol was observed in plain view in the vehicle and the occupant was asked if there were any other firearms in the vehicle. The sole occupant, MORRIS, told the JCSO officers that there was another firearm in the backseat. At that time, the officers observed an AR-15 style rifle in the backseat of the car. MORRIS was removed from the vehicle and detained. The JCSO officers observed two Kevlar ballistic-style vests, one of which was in the backseat and the other was in the back of the vehicle. There was also a ballistic helmet in the vehicle. MORRIS had a loaded magazine in his pocket that matched the pistol and a handheld radio in his possession. MORRIS was Mirandized and waived his rights. MORRIS claimed he met these people online and that he transported some of the target subjects down from Dallas. MORRIS also claimed the plan was to go to the location to make some noise. MORRIS admitted ownership of all the firearms in the vehicle.

10.    Further, during the course of the investigation, MORRIS was interviewed by a Special Agent with the FBI and a Ranger with Texas Department of Public Safety. MORRIS was Mirandized and waived his rights. MORRIS told the FBI that he was at home in Oak Cliff, and claimed he heard about an event on a Signal Group Chat that he was a part of. MORRIS told the FBI that he had been a part of the group chat for a while and that he had been invited to the group chat years ago after attending a protest. MORRIS explained he drove himself, ARNOLD, and two people he knew by nicknames: Champagne and Rowan to the Prairieland Detention Center. (During the course of the

investigation, MORRIS identified Joy Abigail GIBSON as the individual he knew as Rowan.) MORRIS claimed that Champagne and Rowan were strangers, but he invited them to his home in Oak Cliff to ride together to the event at Prairieland Detention Center. MORRIS said he drove the four of them there and parked in a nearby area. MORRIS said he took his handgun, his AR-15 style rifle, and a bullet-proof vest. MORRIS claimed he brought those for his own protection, but he also admitted he brought four handheld radios. MORRIS said he gave three of the radios to ARNOLD, Champagne, and Rowan, and he claims they decided that MORRIS would stay in the car to protect the vehicle to make sure no one broke into the vehicle. MORRIS said he saw multiple other vehicles parked in the area to include a red car parked in front of him and a white SUV. (During the course of the investigation, the red car MORRIS described was determined to be 2016 Red Mazda CX5 registered to Zachary Jared EVETTS. Further, during the course of the investigation, the white SUV was determined to be a 2017 White Nissan Rogue that was driven by Nathan Josiah BAUMANN, who resides in College Station, Texas.) MORRIS explained that he observed a male get out of the front driver's seat of the red car and pull out a cart/wagon and load the cart/wagon with fireworks and a case of water. MORRIS denied seeing any firearms being loaded into the cart/wagon, and he claimed he stayed in the car. MORRIS said that at some point he heard gun shots and waited for his friends for approximately two minutes and then decided that was long enough and he left. Shortly after leaving, MORRIS was stopped by JCSO as referenced above.

11.    At approximately 11:10 PM CDT, JCSO Deputies made contact with seven additional subjects at the intersection of Tanglewood Dr. and Burnett Blvd. on foot, approximately 300 yards east of the engagement of the APD officer. The subjects were dressed in black, military-style clothing, body armor, and covered in mud. Some of the subjects were armed and others had radios. Additional firearms, magazines containing ammunition, and body armor were found during a search of the area between this encounter and the Prairieland Detention Center.

12.    The following subjects were taken into custody by law enforcement: Ines Soto ("I. SOTO"), Nathan Josiah Baumann ("BAUMANN"), Elizabeth Soto ("E. SOTO"), Maricela Rueda ("RUEDA"), Seth Edison Sikes ("SIKES"), Joy Abigail Gibson ("GIBSON"), and Savanna Batten ("BATTEN").

13.    During a search incident to arrest, law enforcement found a Black Motorola Cell Phone in Black Case and a Google Cell Phone in Green Case in GIBSON's backpack inside a Faraday bag. Based on my training and experience, I know that Faraday bags are used to block certain electromagnetic signals, including phone signals. Based on my training and experience, I know that Faraday bags are commonly used by criminal actors to prevent law enforcement from tracking location information through cell phones. Based on this, I have reason to believe that the individuals involved in this offense were actively attempting to conceal their activities from law enforcement.

14.    I am familiar with significant information about the investigation to date that has been submitted in other probable cause warrants for investigative steps. Based on

the investigation thus far, at least one person claimed he saw a flyer on a Discord chat and went to the location without knowing any of the other participants. Another individual was found with a backpack containing multiple pieces of paper, some of which included flyers that indicated anti-government extremist ideology. At least one individual also claimed he did not know there was going to be any violence during the demonstration.

15.     On July 5, 2025, pursuant to a valid search warrant, law enforcement searched 2452 56th Street, Dallas, Texas, MORRIS'S residence. At least one individual was arrested and several more were detained during the search.

16.     On July 5, 2025, Maricela RUEDA placed a phone call from Johnson County Jail, in the Northern District of Texas, to her mother. This phone call took place in Spanish and was translated by a Spanish-speaking FBI Special Agent. During the call, RUEDA instructed her mother to contact "Dani," because he would know what was going on. Agents assessed that "Dani" was Daniel Rolando Sanchez Estrada (SANCHEZ). Inmates at Johnson County Jail are warned that their calls may be recorded.

17.     On July 6, 2025, at approximately 10:55am Maricela RUEDA placed a phone call from the Johnson County Jail to phone number 214-563-8431. This phone number was attributed to SANCHEZ per law enforcement database checks and based on RUEDA'S statements to her mother to call. During the phone call with SANCHEZ, which was in English, RUEDA told SANCHEZ that her car, later identified as a 2014

JEEP WRANGLER SUV, TEXAS TAG WHITE TKB1643, VIN:

1C4AJWAG7EL327341, was in the 2400 block of 56th street in Dallas and her phone

was located in the back. This is near the address of 2452 56th Street in Dallas. Based on

historical cellphone location data from other of the target subjects, it is believed the 2452

address was the "staging location" for the target subjects before they proceeded to the

Prairieland Detention Center. Also, a federal search warrant was executed on or about

July 5 on the 2452 Dallas residence. Inside the residence, agents found nine firearms,

three body-armor vests, cans of spray paint, fireworks, and multiple cell phones and other

electronics. It is also believed that RUEDA drove to the 2452 Dallas address to join the

other target subjects at the "staging location" to proceed to the Prairieland Detention

Center.

18.    In the phone call, she told SANCHEZ to tow her vehicle. Records shows

that RUEDA's car is registered to her at her Fort Worth residence. RUEDA also told

SANCHEZ, "whatever you need to do, move whatever you need to move at the house."

RUEDA expressed concern about the police executing warrants at her house. SANCHEZ

told RUEDA that he had already been to RUEDA's house and said that the house was

good so far. I understood this to mean that SANCHEZ believed that the house had not yet

been searched by police. Also, based on the entire context of the conversation, I believe

RUEDA and SANCHEZ were talking about RUEDA's home in Fort Worth. And

SANCHEZ's parents had told agents that SANCHEZ splits his time between living with

his parents in Dallas and living with RUEDA in Fort Worth.

19.    According to Tarrant County Appraisal District (TAD) records, Maricela RUEDA is the owner of 722 Fernwood St, Fort Worth, Texas 76114. Agents went to this address after RUEDA spoke to SANCHEZ, and did not see any vehicles associated with SANCHEZ at the residence. RUEDA remains in custody at the time of this affidavit.

20.    On July 6, 2025, at approximately 10:49 hours, FBI surveillance team went to 2510 Dove Meadow Drive, Garland, Texas, which they believed was the residential address for SANCHEZ. According to Accurint records, SANCHEZ and his parents were associated with this residence as of April 2025.

21.    While at the house, FBI surveillance team observed a 2012 White Chevy Silverado, TX license plate SLJ-8252, on the roadway directly in front of 2510 Dove Meadow Drive. The aforementioned vehicle was registered to SANCHEZ.

22.    FBI Surveillance team observed SANCHEZ exit the Dove Meadow residence at approximately 11:47 a.m. At that time, SANCHEZ was observed carrying multiple packages from the residence and placing them into the bed of the Chevy Silverado. Once he finished loading the truck, SANCHEZ drove the vehicle to a nearby Racetrack gas station where he fueled up the vehicle.



23.    Officers then observed SANCHEZ stopping at an apartment complex at 117 E Prairie Street, Denton, Texas.  Once there, SANCHEZ exited his white Chevy Silverado, removed a box from the bed of the truck, and brought the box to the door of Apt 204 on the second floor of the apartment complex. SANCHEZ then walked down the stairs with nothing in his hands and returned back to his vehicle and left the apartment complex property.

24.    Agents ran a check of property records and identified the renter of Apartment 204.  The renter does not have a known relationship with RUEDA or SANCHEZ.

25.    At approximately 13:35 hours, Denton PD conducted a felony traffic stop on SANCHEZ's vehicle in Denton, TX. SANCHEZ was arrested for state traffic offenses.  A probable cause search of SANCHEZ's vehicle was later conducted.  No boxes matching the boxes SANCHEZ was observed removing from the Garland residence or putting into the truck were found in the truck.

26.     On July 6, 2025, during a search warrant at 117 E Prairie Street, Denton,

Texas, federal law enforcement found in what appears to be the same box SANCHEZ

was seen carrying a handwritten training, tactics, and planning document for civil unrest

with anti-law enforcement, anti-government, and anti-Trump sentiments, pictured below.

Based on the investigation so far, including the fact that the box found at the Prairie

Street location had the same colored tape and pattern observed as the one SANCHEZ

removed from the Garland location, I believe this is the same box.





## CONCLUSION

27.     Based upon the above facts and circumstances, I respectfully submit that there is probable cause to believe that **Daniel Rolando Sanchez Estrada** knowingly and willfully altered, destroyed, mutilated, or concealed a record, document, or other object, or attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding, in violation of 18 U.S.C § 1512(c). I further submit there is probable cause to believe that on or about July 6, 2025, in the Fort Worth Division of the Northern District of Texas and elsewhere, the defendant, **Daniel Rolando Sanchez Estrada**, did conspire with one or more individuals to violate 18 U.S.C. 1512(c), in violation of 18 U.S.C. § 1512(k).

Joseph Clark Wiethorn
Special Agent
Federal Bureau of Investigation

SWORN AND SUBSCRIBED before me, at 3:45 am/pm, this 7 day of July 2025.

JEFFREY CURETON
UNITED STATES MAGISTRATE JUDGE

**Criminal Complaint - Page 13**